UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Kent M. McDougall and<br>Erica M. McDougall,<br><br>    Debtors.<br>_____/<br><br>Turtle Mountain State Bank,<br><br>    Plaintiff,<br><br>v.<br><br>Michael McDougall, Wilbur-Ellis Rolla,<br>Garrett Hoopman and North Central Grain<br>Cooperative,<br><br>    Defendants.<br>_____/ | Bankruptcy No.: 16-30542<br>Chapter 12<br><br><br><br><br><br><br><br>Adversary No.: 17-7005 |

**MEMORANDUM AND ORDER**

**I.    Introduction**

Plaintiff Turtle Mountain State Bank ("TMSB") initiated this adversary proceeding under 11 U.S.C. § 506, seeking a determination that its liens against proceeds from the sale of livestock are first priority liens senior to the claims or liens filed by Defendants Michael McDougall, Wilbur-Ellis Rolla, Garrett Hoopman and North Central Grain Cooperative ("NCGC"). Defendants Michael McDougall, Hoopman and NCGC filed answers denying that TMSB's liens were prior to their agricultural supplier's liens. Wilbur-Ellis Rolla did not file an answer. The Court tried this adversary proceeding on May 9, 2017. After the presentation of evidence and

1

closing argument, the Court granted in part and denied in part TMSB's requested relief against Michael McDougall and granted TMSB's requested relief against Wilbur-Ellis Rolla. Doc. 18. The Court took the issues related to the priority of Hoopman and NCGC's agricultural supplier's liens under advisement.

The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(K). The venue of this action is proper under U.S.C. § 1409(a).

## II.   Background

### A.   TMSB holds a valid and perfected lien in livestock proceeds.

Debtors executed a number of promissory notes agreeing to repay debt to TMSB. Exs. 200-203. The original principal on the notes totaled $1,275,000. Although TMSB did not provide the outstanding balance due on these notes, Schedule D shows an outstanding debt to TMSB totaling $1,257,024.36. Ex. 209 at 25.

The promissory notes are secured by a commercial security agreement dated October 19, 2011. Ex. 204. Collateral for this security agreement includes all farm products, livestock and their young. Id. TMSB perfected its security interests by filing a financing statement, a continuation and an amendment. Exs. 205-207 (Initial Financial Statement number 11-000700956-2). Defendants do not dispute that TMSB holds a valid and properly perfected lien against farm products, livestock and their young.

Debtors sold livestock at various sales in October 2016 through February 2017. Proceeds from these sales total $599,505.42. Ex. 211.[1] TMSB holds a valid and properly perfected lien against these proceeds. Exs. 204-207.

**B.    NCGC claims its agricultural supplier's lien has priority over TMSB's lien against livestock proceeds checks on which Twin Creek Ranch is listed as a payee.**

Debtors "set up" Twin Creek Ranch, LLC in 2012 and they "implemented it" in 2014.[2] Erica McDougall testified that Twin Creek Ranch was an "operating entity." She explained that, beginning in 2014, she and Kent conducted most of their cattle operation through Twin Creek Ranch, including purchasing supplies and selling cattle. Erica McDougall opened a checking account with TMSB under the name "Twin Creek Ranch, LLC" for this purpose. She paid bills from the ranching operation out of this account and deposited proceeds from the sale of farm products or cattle into this account. Debtors set up a checking account under Twin Creek Ranch at American Bank Center as well. Ex. 209 at 9.

---

[1] Debtors sold the majority of their cattle under Kent McDougall's name at Lake Region Livestock, earning net proceeds totaling $471,120.67. Debtors also sold 74 head of livestock at Stockmen's Livestock Exchange, Inc. under the name "Kent McDougal, Twin Creek Ranch," earning net proceeds totaling $53,132.38. Stockmen's Livestock Exchange issued the check to Kent McDougall and TMSB. Debtors received Court permission to conduct these sales.

In addition, Kent McDougall sold one calf to Doug Demontigny for $100.00. Debtors also sold cattle to Tri-County Steer Carcass Futurity Cooperative in Lewis, Iowa, under "Twin Creek Ranch Kent McDougall" in October 2016 and February 2017 for proceeds totaling $75,152.37. Two of the checks issued by Tri-County Steer Carcass Futurity Cooperative were dated the day before Debtors petitioned for bankruptcy relief, one in the sum of $35,797.07 and the other in the sum of $13,059.17.

[2] Debtors referred to Twin Creek Ranch, LLC as a limited liability company but the Court received no evidence that it was properly formed under North Dakota law or that the Secretary of State issued a certificate of organization.

Erica McDougall also established credit accounts with several suppliers under the name "Twin Creek Ranch, LLC." The account with NCGC is one example. As part of their ranching operation, Debtors regularly obtained supplies from NCGC. In late 2013 or early 2014, Erica McDougall gave NCGC the tax identification number for Twin Creek Ranch and asked that all livestock and ranch supplies be billed to this entity and all personal items be billed to Kent and Erica McDougall. According to NCGS's long-time bookkeeper, Julie Peters, after Erica McDougall contacted NCGC about the McDougall's account, Twin Creek Ranch bought and paid for agricultural supplies at NCGC.

In 2016, NCGC supplied petroleum products and miscellaneous feed and seed supplies for the care of livestock Peters assumed Twin Creek Ranch owned. When Twin Creek Ranch neglected to timely pay these invoices, NCGC filed an agricultural supplier's lien for $14,753.80. Ex. 601. NCGC listed "Twin Creek Ranch, LLC" as the entity to which the supplies were furnished.

In support of the sum of its lien, NCGC offered a computer-generated list of unpaid invoices, which Peters verified at trial were billed to Twin Creek Ranch for the care of livestock. Ex. 600. The earliest invoice on this list is dated April 4, 2016. Consistent with this date, NCGC listed April 4, 2016, as the "first date of supplies first furnished" on the agricultural supplier's lien form.

Before and after Debtors petitioned for bankruptcy relief in October 2016, Kent McDougall sold some livestock under the name "Twin Creek Ranch, LLC." See supra note 1. NCGC claims that its agricultural supplier's lien attached to proceeds from the sale of livestock, specifically the checks which list Twin Creek Ranch as a payee.

4

Peters assumed that Twin Creek Ranch owned the livestock because it was listed as a payee. She explained that, in general, the payee on a livestock check is the owner of the livestock.

Although Kent and/or Erica McDougall routinely sold cattle under the name Twin Creek Ranch, Debtors claim this entity did not own the livestock sold under its name. According to Erica McDougall, "no assets were ever transferred" into the LLC. Ex. 214 at 32. She testified that Debtors intended to eventually transfer ownership of the cattle into the name of Twin Creek Ranch, but never actually made the transfer. Nevertheless, Erica McDougall agreed that those cattle sold under the name of Twin Creek Ranch before bankruptcy were owned by Twin Creek Ranch. At trial, she testified:

> Q: So—just so I'm clear—prior to this you're filing bankruptcy, you have sold cattle in the name of Twin Creek Ranch?
>
> A: Yes.
>
> Q: So, when you sold the cattle under the name of Twin Creek Ranch, that would indicate that Twin Creek Ranch was the owner of those cattle?
>
> A: They were the operating—yes, that was our intention.
>
> Q: That they were the owners?
>
> A: Yes.

Debtors Kent and Erica McDougall filed a petition for relief under Chapter 12 of the Bankruptcy Code on October 19, 2016. On Schedule B, Debtors listed Twin Creek Ranch as an asset and assigned it a value of $0.00. Ex. 209 at 9. They also listed four bank accounts (two with a "Twin Creek Ranch" notation) and claimed the balance of all four accounts exempt on Schedule C. Schedule B also includes a list of several

hundred head of livestock, but there is no reference to Twin Creek Ranch on the livestock list. Id. at 11-12; see also id. at 14. On Schedule D and E/F, Debtors list NCGC as a creditor, again omitting any reference to Twin Creek Ranch.

### C. Hoopman claims his agricultural supplier's lien is prior to TMSB's lien against livestock proceeds.

On April 6, 2016, Hoopman and Kent McDougall entered into a pasture lease for cash rent. Ex. 500. Under this agreement, Kent McDougall leased approximately 1,000 acres of Hoopman's pastureland for $31,000. Ex. 500. The term of the pasture lease extended from May 1, 2016 to November 1, 2016, unless pasture conditions required an earlier termination date. The lease agreement required Kent McDougall to deliver $31,000 to Hoopman on or before May 1, 2016. Id. Kent McDougall failed to meet this payment deadline. Instead, he paid $15,000 on June 22, 2016, and promised to deliver the sum due and owing at a later date. Hoopman issued an invoice on June 22, 2016, to Twin Creek Ranch, Kent and Erica McDougall for the remaining $16,000 obligation. Ex. 501.

On October 11, 2016, Hoopman filed an agricultural supplier's lien for $16,000, noting that he rented approximately 1,000 acres of pastureland located in Rolette County, North Dakota, to feed 180 head of livestock. Ex. 503. "Twin Creek Ranch, LLC" is listed as the entity to which he supplied the pastureland. Id. At trial, Hoopman testified that Kent McDougall filled out the top part of the Agricultural Supplier's Lien/Notice form that Hoopman submitted to the North Dakota Secretary of State, including the notation "Twin Creek Ranch, LLC" as the "Purchaser's (Debtor's) Name." See Ex. 502. Although Kent McDougall wrote "Twin Creek Ranch" as the entity to which the pastureland was supplied on the agricultural supplier's lien form, Kent

6

McDougall signed the lease with Hoopman, and Debtors listed the debt to Hoopman as a personal obligation on their bankruptcy schedules. Exs. 500, 209 at 23.

On the supplier's lien form, Hoopman listed July 1, 2016 as the first date on which he furnished the pasture.  At trial, Hoopman conceded that the term of the lease began on May 1, 2016, but he explained that he used July 1, 2016 because Kent McDougall was late in making the lease payment.

### III.  Analysis

Under North Dakota law, individuals or businesses who furnish agricultural supplies may obtain an agricultural supplier's lien by complying with the procedures listed in section 35-31-02 of the North Dakota Century Code.  If the agricultural supplier complies with these requirements, its lien achieves priority—as to the crops or agricultural products covered by the liens—over all other liens or encumbrances except any agricultural processor's lien. See N.D.C.C. § 35-31-03.  As used in Chapter 35-31, agricultural products include livestock and their products.  See Great W. Bank v. Willmar Poultry Co., 2010 ND 50, ¶¶ 17-25; In re Bernstein, 230 B.R. 144, 150 (Bankr. D.N.D. 1999).

    **A.**    **NCGC's properly perfected agricultural supplier's lien is superior to TMSB's perfected security interest in livestock proceeds checks dated October 18, 2016, on which Twin Creek Ranch is named as a payee.**

To obtain an agricultural supplier's lien for providing petroleum products used to maintain livestock, a supplier must electronically file a statement in the central notice system within 150 days after the supplies are furnished or the services performed. N.D.C.C. § 35-31-02.  To obtain an agricultural supplier's lien for providing supplies other than petroleum to maintain livestock, a supplier must electronically file a statement

7

in the central notice system within 120 days after the supplies are furnished or the services performed. N.D.C.C. § 35-31-02. NCGC filed its agricultural supplier's lien in the sum of $14,753.80 on July 27, 2016. The earliest date on NCGC's unpaid invoice report received at trial shows an invoice date of April 4, 2016, only 114 days before NCGC filed its agricultural supplier's lien. Therefore, NCGC timely filed its supplier's lien for all products and supplies it provided to Twin Creek Ranch. It appears that NCGC provided all the information required by section 35-31-02 and properly filed its lien.

      TMSB does not dispute that NCGC substantially complied with agricultural supplier's lien requirements with one exception: It claims the organization or individual to whom the supplies were furnished was not the owner of the livestock referenced on the lien. NCGC listed Twin Creek Ranch as the purchaser of the agricultural supplies, but TMSB maintains that the livestock sold and the proceeds collected were owned by Debtors and are now property of the bankruptcy estate, not Twin Creek Ranch. Consequently, TMSB argues that it has priority over all the livestock proceeds currently held in trust by Debtors because NCGC's agricultural supplier's lien does not substantially comply with section 35-31-02.

      In support of its argument that Twin Creek Ranch did not own livestock, TMSB relies on Debtors' representations. In its trial brief, it cites to Erica McDougall's affidavit and Debtors' bankruptcy schedules. At trial, it questioned witnesses regarding Debtors' admissions related to livestock ownership. TMSB asserts that this evidence shows Debtors owned the livestock. Conversely, NCGC points to Debtors' admissions that

8

they sold cattle under the name Twin Creek Ranch, and it offered evidence that several of the livestock proceeds checks list Twin Creek Ranch as a payee.

The answer to the ownership issue is not clear. Erica McDougall explained that Debtors intended to transfer cattle to Twin Creek Ranch, but they did not actually complete the transactions. Conversely, she conceded that she and Kent McDougall regularly sold cattle through Twin Creek Ranch before bankruptcy and agreed that those cattle sold by Twin Creek Ranch prior to bankruptcy were owned by it. There are no allegations or evidence establishing that transactions completed by Twin Creek Ranch before bankruptcy were fraudulent or otherwise inappropriate.

After bankruptcy, Debtors consistently testified that they owned the livestock. They do not list Twin Creek Ranch as an owner or part owner of the livestock on their schedules, and they list the value of the LLC as $0.00, suggesting that it owns no assets. However, other representations on the schedules suggest Debtors are either confused about ownership issues or are intentionally blurring the lines between which assets they own and the assets the LLC owns. For example, Debtors list bank accounts in the name of Twin Creek Ranch on Schedule B but then exempt them on Schedule C, suggesting Debtors claim the cash in these accounts. They also list NCGC and Hoopman as their creditors, omitting any reference to Twin Creek Ranch. Also, Debtors continued to sell under the name Twin Creek Ranch or allow livestock buyers to add Twin Creek Ranch to the proceeds checks even after they petitioned for bankruptcy relief. See Ex. 211 (Ex. H, checks dated October 31, 2016 and February 14, 2017).

In light of these contradictions, the Court finds that the greater weight of the evidence shows that Debtors owned the livestock sold after they petitioned for bankruptcy relief (October 19, 2016) and Twin Creek Ranch owned the livestock sold under its name on October 18, 2016. Accordingly, NCGC substantially complied with section 35-31-02 and holds a properly perfected and valid agricultural supplier's lien against livestock sold to Tri-County Steer Carcass Futurity Cooperative and checks it issued to Twin Creek Ranch and others on October 18, 2016 in the amount of $35,797.07 and $13,059.17. NCGC's lien is prior to the lien of TMSB as to these proceeds only.

With regard to proceeds from the sale of cattle after October 19, 2016, NCGC agricultural supplier's lien does not substantially comply with section 35-31-02 because the purchaser of the supplies NCGC provided (Twin Creek Ranch) did not own the livestock referenced on the lien. TMSB's properly perfected security interest is prior to NCGC's agricultural supplier's lien as to livestock sold and checks issued after October 19, 2016 ($550,649.18).

**B.    Hoopman's agricultural supplier's lien is junior to TMSB's perfected security interest in livestock proceeds.**

To obtain an agricultural supplier's lien for providing pasture land to livestock, the supplier must electronically file a statement in the central notice system within 120 days after the supplies are furnished or the services performed. N.D.C.C. § 35-31-02. Hoopman filed his agricultural supplier's lien on October 11, 2016, more than 120 days after the term of the pasture lease began. The lease term began on May 1, 2016 and the lease payment was due on that date as well. Using May 1, 2016 as the first date

10

the pasture land was furnished, Hoopman's deadline to file his agricultural supplier's lien was August 29, 2016.

On his agricultural supplier's lien form, Hoopman indicated that that "first date of supplies first furnished" was July 1, 2016. Hoopman argues that this date is correct because it reflects the remaining balance of rent due after Twin Creek Ranch made a $15,000 payment on June 22, 2016. The Court is not convinced. The term of the lease began on May 1, 2016, and the evidence shows that May 1, 2016, is the first date Hoopman provided pastureland to Twin Creek Ranch and Debtors. See In re Bernstein, 230 B.R. at 153. The lien is untimely and not entitled to priority over TMSB's properly perfected security interest in livestock proceeds. TMSB's lien is prior to the agricultural supplier's lien dated October 11, 2016, filed by Garrett Hoopman for pastureland provided to Twin Creek Ranch (Initial Financing Statement # 16-000110552-1).

## IV. Conclusion

Based on the evidence received and for the reasons stated on the record, IT IS ORDERED:

1. Turtle Mountain State Bank's perfected security interest in livestock and livestock proceeds is senior and prior to the agricultural supplier's lien filed by Garrett Hoopman dated October 11, 2016, for pastureland rental in the sum of $16,000 (Initial Financing Statement # 16-000110552-1).

2. Turtle Mountain State Bank's perfected security interest in livestock and livestock proceeds is junior to the agricultural supplier's lien filed by North Central Grain Cooperative dated July 27, 2016, for petroleum products and miscellaneous supplies totaling $14,753.80 supplied for livestock sold to Tri-

County Steer Carcass Futurity Cooperative and checks it issued to Twin Creek Ranch, LLC and others on October 18, 2016 in the amount of $35,797.07 and $13,059.17. (Initial Financing Statement # 16-000079423-8). Turtle Mountain State Bank's properly perfected security interest is prior to North Central Grain Cooperative's agricultural supplier's lien as to livestock sold and checks issued after October 19, 2016 ($550,649.18).

Dated May 31, 2017.

*Shon Hastings*

Shon Hastings
United States Bankruptcy Judge